[L. A. No. 28681.   In Bank.   Feb. 14, 1966.]

D. THOMAS JOHNSTONE, JR., Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

154

D. Thomas Johnstone, Jr., in pro. per., for Petitioner.

F. LaMar Forshee and Herbert M. Rosenthal for Respondent.

THE COURT.—Petitioner, a member in good standing of the State Bar since his admission in 1952, was charged with violating his oath and duties as an attorney (Bus. & Prof. Code, §§ 6103, 6067 and 6068), wilful violation of rule 9, Rules of Professional Conduct of the State Bar of California (commingling of funds), and with the commission of acts involving moral turpitude and dishonesty (Bus. & Prof. Code, § 6106). Following hearings before and recommendations by a local administrative committee the Board of Governors of the State Bar found that petitioner wilfully mishandled certain funds received and held by him in trust, and recommended that he be suspended from the practice of law for a period of three months.

Prior to March 1963 petitioner represented Mr. John Ensey in an action for personal injuries arising out of an industrial accident. Mr. Ensey had collected workmen's

compensation benefits from the Industrial Indemnity Company during the period of his disability, and that company became entitled to a lien in the amount of $4,945.57 against any recovery which might be effected by petitioner in the personal injury action. (Lab. Code, §§ 3850 et seq.) Petitioner eventually negotiated a $3,000 compromise settlement to be paid by the tortfeasor, and the Industrial Indemnity Company agreed that it would release and discharge its lien in exchange for $1,000 of the funds so recovered.

On or about March 6, 1963, petitioner received a draft in the agreed amount of $3,000, which draft was made payable to himself, Ensey and the Industrial Indemnity Company. He obtained the endorsements of Ensey and the authorized representative of the Industrial Indemnity Company, and deposited the draft in his trust account. At the time of the hearing herein petitioner had failed to pay to Industrial Indemnity Company any part of its $1,000 share. In October 1963, however, a check in the amount of $1,000 had been drawn by petitioner on his trust account in favor of and delivered to the Industrial Indemnity Company, but upon presentation had been dishonored for lack of sufficient funds.

The Board of Governors made determinations generally consistent with the foregoing account, specifically finding that prior to compromising the personal injury action petitioner "did agree to pay and did represent that he would pay Industrial Indemnity Company $1,000 out of the sum of $3,000 . . . and Industrial Indemnity Company did, in exchange therefor, agree to compromise and discharge its lien and claim for said sum of $1,000"; that petitioner "did receive, deposit in his trust account, and hold said funds, to the extent of $1,000 thereof, in trust for Industrial Indemnity Company and [petitioner], as trustee, was obligated to pay $1,000 out of said $3,000, received in settlement, to Industrial Indemnity Company"; that petitioner "did thereafter wrongfully and wilfully refuse and fail to pay said $1,000, which he had received as trustee, to Industrial Indemnity Company." The board further determined that there was no attorney-client relationship between petitioner and the Industrial Indemnity Company.

When an attorney receives money on behalf of a third party who is not his client, he nevertheless is a fiduciary as to such third party. Thus the funds in his possession are impressed with a trust, and his conversion of such funds

is a breach of the trust. In *Clark* v. *State Bar*, 39 Cal.2d 161, it is said at page 166 [246 P.2d 1]: "When an attorney assumes a fiduciary relationship and violates his duty in a manner that would justify disciplinary action if the relationship had been that of attorney and client, he may properly be disciplined for his misconduct." In that case the attorney, as guardian of an incompetent's estate, was suspended for six months for mishandling funds. In *Haley* v. *State Bar*, 60 Cal.2d 404 [33 Cal.Rptr. 609, 385 P.2d 1], a situation factually more similar to the instant case was presented. There the attorney was suspended for one year for the misappropriation of funds coming into his hands in compromise of a personal injury action against which he knew the State Compensation Insurance Fund had an interest pursuant to its lien claim. In *Schullman* v. *State Bar*, 59 Cal.2d 590 [30 Cal.Rptr. 834, 381 P.2d 658], an attorney was placed on probation for three years due to his failure to meet obligations for money borrowed from clients in a transaction not involving their attorney-client relationship. (See also, *Yapp* v. *State Bar*, 62 Cal.2d 809 [44 Cal.Rptr. 593, 402 P.2d 361].)

The wilful violation of petitioner's trust herein, as found by the Board of Governors, clearly constitutes an act involving moral turpitude and dishonesty within the meaning of section 6106 of the Business and Professions Code,[1] as that section has been applied even in the absence of an attorney-client relationship. Petitioner contends, however, that the understandings between the parties were other than as found by the board and that in view of such actual understandings he is not guilty of any moral or professional breach of conduct.

It is petitioner's contention that he represented Ensey only in the personal injury action; that Ensey negotiated directly with Industrial Indemnity Company for compromise of that company's lien claim and termination of workmen's compensation benefits due Ensey; that those parties entered into an agreement compromising the various claims and requiring the payment of $1,000 to the company; that petitioner had no knowledge of the arrangement until

---

[1] Section 6106 provides in pertinent part: "The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension."

after he had settled the personal injury claim; that Ensey then realized that he was still suffering from the injuries he had sustained and requested petitioner to act in his behalf to set aside the settlement with Industrial Indemnity Company; that Ensey directed petitioner not to pay the company any part of the $1,000, and instead to use that fund to pay other obligations owed by Ensey; that thereafter Ensey left for the midwest and could not be located.

The foregoing contentions are in conflict with the board's findings in important respects, primarily in relation to whether petitioner personally agreed with Industrial Indemnity Company to pay over the $1,000 upon receipt of funds from the personal injury claim and compromise. In resolving that conflict we are referred to no factual matters in support of petitioner's claim that the arrangement with the company was made by Ensey without petitioner's knowledge. At the same time there is substantial, almost conclusive factual support for the board's findings.

The record reveals, for instance, that while negotiating the personal injury claim petitioner had inquired of Industrial Indemnity Company as to the extent of its lien so he could take it into consideration in attempting to effect a compromise with the tortfeasor. The claims supervisor of that company testified that he, in behalf of the company, and petitioner entered into an agreement to settle the company's claim for $1,000 to be paid out of the proposed $3,000 compromise of the personal injury claim or, if that matter went to trial and the company recovered through asserting its lien, to pay petitioner one-third of any such recovery. According to the witness, petitioner confirmed this understanding on each of several occasions after compromise of the personal injury claim was effected, expressly stating on such occasions that petitioner, the company and Ensey would each receive $1,000 of the $3,000. It is uncontroverted that the $3,000 draft was made payable to each of those persons or entities; that petitioner obtained the endorsements of the other two, and that the company executed and returned its releases to petitioner. A second employee of the company testified that telephone conversations he had with petitioner after receipt of the $3,000 confirmed the foregoing understanding and petitioner consistently acknowledged his responsibility for payment of the $1,000 to the company. It is also undisputed that, in accordance with that understanding, petitioner forwarded the $1,000 check which was dishonored.

Finally, as to the question of petitioner's personal participation in making arrangements with the Industrial Indemnity Company, the record reveals that he entered into a stipulation (which he later unilaterally retracted) that "Prior to the consummation of the settlement [he] had agreed with Industrial Indemnity to pay it $1,000 out of said $3,000 settlement, in full discharge of its lien claim. . . ."

Petitioner's explanation of his handling of the funds is likewise without factual support as to his further contention that he was directed to utilize the $1,000 to pay other creditors. The record is silent as to any testimony of such payments and no attempt is now made to show that any part of the fund was devoted to that purpose.

Thus petitioner has completely failed to sustain his burden of showing that the findings of the board are not supported by the evidence or that its recommendations are improper. (*Scofield* v. *State Bar*, 62 Cal.2d 624, 625 [43 Cal.Rptr. 825, 401 P.2d 217]; *McKinney* v. *State Bar*, 62 Cal.2d 194, 195 [41 Cal.Rptr. 665, 397 P.2d 425].) He has further failed to sustain his burden of demonstrating lack of support for or lack of justice in the recommendation of the Board of Governors (*Haley* v. *State Bar, supra,* 60 Cal.2d 404, 405), and that recommendation appears to be fair, just and appropriate.

It is ordered that petitioner be suspended from the practice of law for a period of three months, the order to become effective 30 days after the filing of this opinion.