[L. A. No. 29105.   In Bank.   Feb. 18, 1969.]

GEORGE A. P. SIMMONS, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Richard W. Petherbridge for Petitioner.

F. LaMar Forshee and Herbert M. Rosenthal for Respondent.

THE COURT.—This is a proceeding to review a recommendation of the State Bar of California that petitioner be suspended from the practice of law for a period of four years on conditions of probation, including actual suspension for the first two years.

*Facts*: Petitioner was admitted to practice law in this state in December 1955. He conducts in Los Angeles a real estate business, as well as a law practice, maintaining separate offices for each.

Mr. Odell Gilbreath, the complaining witness in this proceeding, met petitioner in about 1954. At that time petitioner prepared Mr. Gilbreath's income tax returns.

Early in 1964, wishing to go into the business of operating a bar in San Bernardino, Mr. Gilbreath employed petitioner to represent him in a resale or refinancing of his home. Petitioner anticipated that he could thus obtain the funds needed for his share of the cost of the liquor license. During the latter part of March 1964, Mr. Gilbreath's wife started divorce proceedings against him, and he employed petitioner to represent him in that matter.

When the resale or refinancing was completed, Mr. Gilbreath found that he did not have sufficient funds to complete the purchase of the liquor license. Shortly thereafter petitioner asked him if he would be interested in investing in a second deed of trust on a particular piece of property in Los Angeles. Mr. Gilbreath agreed to do so, and on November 3, 1964, handed petitioner, in the latter's law office, a check for $1,000 and $200 in cash. As a receipt, petitioner gave Mr. Gilbreath one of his professional cards describing petitioner as an attorney, on the back of which he wrote, "Received of Odell Gilbreath $1,200 in Trust for investiment purposes." Petitioner cashed the check the following day at a drug store.

Mr. Gilbreath had expected to receive a document showing that he was the beneficiary under a second deed of trust on the property petitioner had mentioned, but he received nothing. He tried many times to reach petitioner and left word for petitioner to call him, but petitioner made no attempt to respond. Mr. Gilbreath finally complained to the State Bar.

In the disciplinary proceedings thereafter commenced against petitioner, he contended that after cashing Mr. Gilbreath's check, he kept the money in an envelope in a safe in his office and used $900 of it in either December 1964 or January 1965 to acquire, in the name of a nominee, certain property on Casitas Avenue in Pasadena. In July 1965 he

allegedly used the remaining $300 to pay for closing costs in an escrow relating thereto.

Although Mr. Gilbreath never received any documents indicating he had an interest of any kind in the property, petitioner maintained at his hearing before the local administrative committee that Mr. Gilbreath had a half interest with him in a second deed of trust on the Casitas Avenue property and that such interest would be worth about $1,700 when the deed or the property was sold. Petitioner admitted, however, that there was no document indicating in any way that Mr. Gilbreath had an interest in the property.[1]

*Questions*: First. *Does the evidence sustain the finding of culpability on the part of petitioner?*

*Yes.* The burden is upon one seeking a review of a recommendation of a disciplinary board to show that its findings are not supported by the evidence or that its recommendation is erroneous or unlawful. (*McKinney* v. *State Bar,* 62 Cal.2d 194, 195 [2] [41 Cal.Rptr. 665, 397 P.2d 425].) In the present case, the record discloses that petitioner has not sustained this burden.

The only direct attack made by petitioner on the findings

---

[1]During the course of the hearing before the local administrative committee, petitioner testified, as follows: ''Q. Nowhere is there any evidence in writing of Mr. Gilbreath's money being in the property nor his having any interest in the property, is that true? A. True. . . . Q. If you were to sell the property for $50,000 tomorrow there is no writing indicating how that money should be divided, isn't that true? A. That is true. Q. And if when you walk out of here you were to be hit by a truck there would be nothing to show that you owed anything to Mr. Gilbreath except this receipt which you gave him, isn't that true? A. Yes, except that other people know about it; no written document. . . . Q. What steps, if any, have you taken to protect this property or his interest in the property from the claims of your creditors? A. This is the reason I don't have it in my name. Q. What steps, if any, were taken to protect this from the creditors of Mr. Mashnoff [the nominee in whose name title was taken]? A. Mr. Mashnoff is financially solvent. He has a great deal of property and a great deal of money. He doesn't have problems. Q. If he were to die what protection is there to establish any right in this property as against his heirs? A. I have a quitclaim deed from him. Q. But that quitclaim deed, in other words you have put it in his name to keep it away from your creditors? A. No, that was not the entire reason. The entire reason was that there were so many people investing in this property. My father invested. Mr. Gilbreath invested in it. Since he invested others have invested. Q. How much money did your father put into it? A. About $900. Q. By cash or by check? A. Neither. He was buying materials and things like that which went into this property. Q. And is there any document indicating his interest? A. No. . . . Q. . . . As to the $1,200 you can't conceive of any way that you could have made any document or declaration asserting that what appeared to be in your name was in fact held in trust by you to the extent of $1,200 for Mr. Gilbreath, your client? A. Mr. Gilbreath had a receipt from me showing it was for investment purposes.''

and recommendation herein is a general averment that "the record does not support the Findings of Fact . . . therefore the recommendation based upon the erroneous findings is in error." This allegation is not otherwise amplified or supported by petitioner in his petition or brief. Not a single specific reference to the record is made. Instead, petitioner appears to argue his view of the transaction without any specific factual support.

■ Second. *Did petitioner owe Mr. Gilbreath a duty to handle the latter's funds in accordance with the standards imposed by rule 9 of the Rules of Professional Conduct?*[2]

*Yes.* Petitioner contends that the transaction arose out of the resale or refinancing of Mr. Gilbreath's home, that he had handled that matter in his capacity of real estate broker, and that the strict rules applicable to an attorney-client relationship therefore do not apply.

Mr. and Mrs. Gilbreath became reconciled during the year 1964 after the divorce proceedings had been started, but petitioner testified that his representation of Mr. Gilbreath therein continued until some time in 1965. Mr. Gilbreath was therefore a client of petitioner at the time petitioner accepted the $1,200 in trust in November 1964, and the rules applicable to an attorney-client relationship apply.

Even though Mr. Gilbreath received the funds in a transaction in which petitioner conceivably was representing him as a real estate broker rather than an attorney, petitioner, having accepted the money in trust, would still be held to the same high standard.

■ Thus, this court said in *Johnstone* v. *State Bar,* 64 Cal.2d 153, 155-156 [2] [49 Cal.Rptr. 97, 410 P.2d 617]: "When an attorney receives money on behalf of a third party who is not his client, he nevertheless is a fiduciary as to such third party. Thus the funds in his possession are impressed with a trust, and his conversion of such funds is a breach of the trust. In *Clark* v. *State Bar,* 39 Cal.2d 161, it is said at page 166 [246 P.2d 1]: 'When an attorney assumes a fiduciary relationship and violates his duty in a manner that would

---

[2]Rule 9 of the Rules of Professional Conduct reads: "A member of the State Bar shall not commingle the money or other property of a client with his own; and he shall promptly report to the client the receipt by him of all money and other property belonging to such client. Unless the client otherwise directs in writing, he shall promptly deposit his client's funds in a bank or trust company, authorized to do business in the State of California, in a bank account separate from his own account and clearly designated as 'Clients' Funds Account' or 'Trust Funds Account,' or words of similar import. . . ."

justify disciplinary action if the relationship had been that of attorney and client, he may properly be disciplined for his misconduct.' ''

Under the circumstances of this case, the record clearly supports the finding that petitioner misappropriated his client's funds.

Third. *Is the degree of discipline recommended (suspension from the practice of law for a period of four years on conditions of probation, including actual suspension for the first two years) appropriate?*

*Yes.* The local administrative committee after each hearing of this matter, as well as the disciplinary board after its first hearing, unanimously recommended that petitioner be disbarred. After a second hearing, the disciplinary board made the recommendation hereinabove set forth.

In making its recommendation, the disciplinary board properly gave consideration to the fact that in a prior proceeding, likewise involving the misappropriation of a client's funds, it had recommended that petitioner be suspended for two years (one year actual and one year on probation). The recommended penalty was subsequently imposed. (*Simmons* v. *State Bar,* 65 Cal.2d 281 [54 Cal.Rptr. 97, 419 P.2d 161].)

The misappropriation of a client's funds, in the absence of clearly extenuating circumstances, warrants disbarment. (*In re Freiburghouse,* 52 Cal.2d 514, 516 [2] [342 P.2d 1].) In the present case, there are no clearly extenuating circumstances.

At the time of the local administrative committee hearing, petitioner did, upon request, pay Mr. Gilbreath $1,350 in cash, representing the amount the latter had turned over to petitioner, plus interest for the use of the money. Restitution is no defense in a disciplinary proceeding, but the conduct of the attorney in making the client whole, as well as the timeliness and manner of restitution, may have a bearing on discipline. However, restitution where made under the pressure of a disciplinary hearing, and where there has been no prior offer of repayment or accounting, is entitled to no weight. (*Maggart* v. *State Bar,* 7 Cal.2d 495, 502 [3] [61 P.2d 451].)

Petitioner's wilful failure to observe rule 9 of the Rules of Professional Conduct regarding the handling of trust funds and his part in the filing of a materially altered

affidavit with this court[3] are evidence of an unwillingness to abide by the responsibilities of his profession.

[3]Two months after petitioner petitioned this court for a writ of review, there was filed in his behalf a declaration by Mr. Gilbreath, in which the latter apparently declared that when he delivered the $1,200 to petitioner, he expected to look to petitioner alone for repayment; that petitioner had informed him that he did not plan to keep him informed of the details of the use made of the money; that it was agreed that petitioner alone had the right to decide what to do with the $1,200; that at the time he delivered the money to petitioner it was agreed that the money would be held in cash by petitioner and would not be deposited in a bank; that the money was not delivered to petitioner as an attorney; that petitioner did not represent him as his attorney in this matter; and that it was agreed that petitioner would not give him an accounting or details of the transaction.

At the time the declaration was filed, this court intended to incorporate in a single opinion both this matter and the one subsequently covered by the opinion in 65 Cal.2d 281. In view of the filing of the declaration, however, this court ordered that further proceedings be conducted by the State Bar, and a reference was thereafter conducted.

The declaration purportedly signed by Mr. Gilbreath consisted of three pages. At the bottom of the second page, a line for the filling in of the date and a line for the signature of the declarant have obviously been erased. The third page, which is numbered ''2,'' contains only the language ''Executed on September 27, 1966, at Los Angeles, California'' and Mr. Gilbreath's signature.

At the reference, Mr. Gilbreath testified that the declaration which he signed was a one-page document, and he denied that it contained the statements incorporated in the declaration filed in this court in petitioner's behalf.

The pertinent committee findings in the matter of the affidavit, as adopted by the disciplinary board, are: ''The 'Declaration for Petitioner, George A. P. Simmons,' filed with the Clerk of the Supreme Court on October 19, 1966, on the inside cover thereof is entitled 'Waiver of Oral Argument and Petition to File Affidavit of Odell Gilbreath' and bears a signature of the Respondent [petitioner] herein. Attached to said declaration filed with the Supreme Court for the State of California is the 'Declaration' of Odell Gilbreath containing a date of execution of September 27, 1966 at Los Angeles, California. The Committee finds that the Waiver of Oral Argument and Petition to File Affidavit of Odell Gilbreath (entitled Declaration for Petitioner, George A. P. Simmons on the front cover thereof) was prepared during the period about September 25 to September 27, 1966, by Nelle Simmons, the mother of Respondent, and Florence Wasserman, a part-time legal secretary for Respondent. The Committee finds that the document entitled 'Petition' was prepared with the permission of Respondent but that the signature of the Respondent was affixed by Florence Wasserman. The Committee further finds that the Respondent had no specific knowledge of the documents prepared by Nelle Simmons or Florence Wasserman that were subsequently filed with the Clerk of the Supreme Court of the State of California. The Committee finds that Odell Gilbreath did sign a declaration entirely written upon one page of paper. The Committee further finds that the wording of the one-page declaration signed by Odell Gilbreath on or about September 27, 1966, contained statements materially different from the statements contained in the declaration filed with the Supreme Court on October 19, 1966. The Committee further finds Nelle Simmons and Florence Wasserman had in their possession the declaration signed by Odell Gilbreath during the period September 27, 1966 to

In his testimony before the local administrative committee, petitioner showed a complete lack of candor, and his own defense indicates his utter disregard of, and bad faith toward, the interests of his client. In addition, as indicated above, petitioner has been found guilty of the same offense in a previous proceeding.

Under the circumstances of this case, the recommended discipline is eminently fair, even lenient.

It is ordered that petitioner be suspended from the practice of law for a period of four years, and that execution of the order be stayed and petitioner be placed on probation for said period of four years upon the conditions prescribed by the board in this matter, including actual suspension from practice for the first two years thereof, the order to be effective 30 days after the filing of this opinion.

Petitioner's application for a rehearing was denied March 19, 1969.

---

October 19, 1966. Respondent did not testify at the further hearing held on July 18, 1967, or in any manner explain his delegation to his mother and Florence Wasserman of authority to prepare the declaration dated September 27, 1966, and to cause this declaration to be filed with the Supreme Court.''

Although the record does not indicate that petitioner knew at the time of the filing that the affidavit prepared by his mother and his secretary was misleading, the irregularities therein were called to his attention by counsel for the State Bar within a few days after the filing. Petitioner nevertheless took no steps to straighten out the matter.

It would appear that the inherent nature of the affidavit was such that petitioner should have supervised and controlled its preparation and filing. If not properly obtained and prepared, an affidavit of such a nature would necessarily result in misleading the court. This is precisely what happened.

Petitioner's act in turning his own defense over to his mother defies understanding, except that by so doing he deliberately enabled lay persons to prepare and file in his name a materially altered affidavit which would benefit him if it misled the court (by materially delaying the court's consideration of a recommendation that he be disbarred), but if it failed to mislead the court, would permit him to claim that he should not be held accountable, since he was not directly involved in its preparation and filing.