[L.A. Nos. 30980, 30919. Mar. 28, 1979.]

JESSE A. HAMILTON, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Jesse A. Hamilton, in pro. per., and Charles M. Farrington for Petitioner.

Herbert M. Rosenthal and Scott J. Drexel for Respondent.

**OPINION**

**THE COURT.**—We review recommendations of the State Bar Disciplinary Board in two separate matters that Jesse A. Hamilton be disbarred. (Bus. & Prof. Code, § 6083, subd. (a); Cal. Rules of Court, rule 952(a).) The recommendation in the first matter is grounded on petitioner's willful noncompliance with our order entered in an earlier disciplinary matter (Cal. Rules of Court, rule 955). The recommendation in the second matter is grounded on petitioner's deposit of personal funds in his client trust account, issuance of checks for which there were insufficient funds and breach of fiduciary duties for failure to account as an escrow officer.

Petitioner was admitted to practice in 1934. He has a record of three prior disciplinary proceedings which have involved commingling and misappropriation of client's funds, failure to maintain and preserve adequate records and willful abandonment of clients.

### WILLFUL NONCOMPLIANCE WITH RULE 955[1]

█ On January 27, 1977, we ordered petitioner suspended for one year effective February 28, 1977, and directed he comply with provisions of California Rules of Court, rule 955 within 30 days as to subdivision (a) and 40 days as to subdivision (c).[2] State Bar notified petitioner of the order on February 28, 1977, directing his attention to time limits for compliance.

---

[1] This is the only misconduct charged and found against petitioner in L.A. 30980 (Bar. Misc. 3928). All other misconduct has been charged and found in L.A. 30919 (Bar. Misc. 4050).

[2] Rule 955 provides in pertinent part that (a) this court in disbarring or suspending an attorney may require him to notify all clients, co-counsel and adverse counsel in pending litigation of his disbarment, and (c) require him to file an affidavit as proof of compliance within the time limit provided. A disbarred attorney shall keep and maintain records of the steps taken by him so that proof of compliance will be available for receipt in evidence in subsequent proceedings. (Subd. (d).) Sanctions for willful failure to comply include disbarment. (Subd. (e).)

It is undisputed petitioner failed to comply within time limits specified for compliance with any part of rule 955. We issued an order on May 19, 1977, referring the matter of noncompliance to the State Bar for hearing and report as to whether petitioner had willfully failed to comply and, if so, for recommendation as to nature and extent of discipline.

Petitioner testified he received neither a copy of the court order nor the State Bar's notice, although he had continuously resided at his listed home address for eight years and had regularly received mail there since January 1977. He asserts he first learned of his suspension in May 1977 after notice thereof was published in the State Bar Journal. He does not recall any reference to rule 955, although the brief journal item clearly states compliance requirements.

Petitioner claims he has no written record of having provided notice to clients and opposing counsel. He did not notify clients, counsel or courts before whom he had pending litigation because he was not aware of the rule 955 requirement. However, he gave assurances during formal disciplinary hearing on November 7, 1977, that the required affidavits would be filed within one week. As of September 1978, no affidavits had been filed.

Petitioner contends a lengthy illness excuses his failure to comply with or discover the requirements of rule 955. Although he asserts a serious illness, he has not been under the regular care of a physician at any time since January 1977 and his major physical complaint was described as intermittent "leg cramps."

We are persuaded by the disciplinary board's findings that petitioner's failure to comply was not only "willful" but a deliberate indifference to and disregard of his duties to his clients, this court and the administration of justice.

■ We have considered the meaning of "willfulness" in the context of rule 955. (*Durbin* v. *State Bar* (1979) *ante,* p. 461 [152 Cal.Rptr. 749, 590 P.2d 876].) In that case we rejected a contention that bad faith was a necessary element of "willfulness," concluding that "Only a general purpose or willingness to commit the act or permit the omission is necessary." (*Id.,* at p. 467.) We have also held in other contexts that to establish a willful breach of the Rules of Professional Conduct, "[I]t must be demonstrated that the person charged acted or omitted to act purposely, that is, that he knew what he was doing or not doing and that he intended either to commit the act or to abstain from committing it."

(*Zitney v. State Bar* (1966) 64 Cal.2d 787, 792 [51 Cal.Rptr. 825, 415 P.2d 521]; see also *Abeles* v. *State Bar* (1973) 9 Cal.3d 603, 610-611 [108 Cal.Rptr. 359, 510 P.2d 719]; *Millsberg* v. *State Bar* (1971) 6 Cal.3d 65, 74 [98 Cal.Rptr. 223, 490 P.2d 543].) Willfulness of an act is thus not necessarily dependent upon knowledge of the provision which is violated. (*Gassman* v. *State Bar* (1976) 18 Cal.3d 125, 131 [132 Cal.Rptr. 675, 553 P.2d 1147]; *Silver* v. *State Bar* (1974) 13 Cal.3d 134, 145 [117 Cal.Rptr. 821, 528 P.2d 1157].) There is no doubt petitioner's noncompliance was willful under established standards.

### TRUST ACCOUNT VIOLATIONS

*State Bar Membership Fee Matter*

■ Petitioner is charged with depositing personal funds in a client trust account in violation of Rules of Professional Conduct, rule 8-101 (formerly rule 9) (see 3B West's Annot. Bus. & Prof. Code, foll. § 6076; Deering's Cal. Codes Ann. Rules (1976 ed.) pp. 625-626.)[3] On April 10, 1975, petitioner wrote a check drawn upon this client trust account for $100 payable to the State Bar for his annual membership fee for 1975. On or about April 17, 1975, the State Bar wrote petitioner informing him his check was received but could not be accepted because a delinquency payment of $25 was due. Petitioner thereafter wrote a second check also drawn on his client trust account for the $25. On April 22, 1975, a State Bar staff attorney wrote petitioner suggesting he either advise the State Bar of the circumstances surrounding the use of such funds or submit a single check drawn on another account in lieu of the checks already received by the State Bar.

On July 3, 1975, the staff attorney again wrote, informing petitioner the trust fund checks would be deposited for payment unless petitioner responded within 10 days. The record indicates the checks were deposited on July 18.

On July 25 State Bar received a money order in the amount of $125 from petitioner. The staff attorney returned petitioner's money order informing him the matter had been referred for investigation.

---

[3] Rule 8-101 provides in pertinent part: "All funds received or held for the benefit of clients by a member of the State Bar . . . shall be deposited in one or more identifiable bank accounts labelled 'Trust Account' . . . or words of similar import . . . and no funds belonging to the member[s] . . . shall be deposited therein or otherwise commingled. . . ."

On November 6, 1975, petitioner was informed that payment of his membership fee with checks drawn upon a trust account violated Rules of Professional Conduct, rule 8-101. He was asked to submit a written explanation within 10 days. Petitioner responded claiming checks were drawn against personal funds in the client trust account, such funds being his percentage of a client's personal injury settlement. On two subsequent occasions he gave testimony contradicting such explanation.

Petitioner also testified the account contained no client's funds during the period in question, although he acknowledges he never notified the bank holding the account that it was no longer a client trust account.

*Lewis Matter*

Petitioner again is charged with violation of rule 8-101 and additionally with issuing a check on such client's trust account when there were insufficient funds to cover payment.

In November 1975 Tommie Lewis had retained an attorney to represent his brother on a criminal charge. Lewis additionally contacted petitioner because he had been told petitioner "had a lot of contacts" who could assist arranging bail. According to Lewis' testimony, petitioner stated bail could be arranged and asked Lewis to give him $500. There is conflicting testimony concerning the purpose of the $500 check which Lewis gave petitioner. Lewis testified that it was to cover cost of the bail bond and to compensate petitioner for making arrangements for bail, that petitioner was not to cash the check unless the brother was timely released, and that if petitioner were successful he might be retained as counsel for the brother although no fees were discussed. Since Lewis did not possess collateral required by the bondsman, his brother was not released.

Petitioner testified that Lewis paid him $500 as part of a $1,500 retainer fee. He denied he was not to cash the check unless he successfully arranged for bail. Petitioner deposited Lewis' check in his client trust account on November 3, 1975. When Lewis objected to the deposit of the $500 check, petitioner agreed to refund $300 retaining—over Lewis' objections—the balance as fee for his services during the five or six hours he had spent on the case. When Lewis attempted to cash petitioner's $300 check it was returned for lack of sufficient funds.[4] After several attempts

---

[4] Petitioner suggested the insufficiency may have been the result of bank error but offers no evidence in support of this position.

to obtain payment, Lewis threatened to report the matter to the State Bar. Petitioner subsequently paid Lewis $300.

Petitioner asserts that while the account in question was labelled and had been used as a client's trust account, there were no client's funds therein from October through December 1975.

■    The purpose served by rule 8-101 is " ' "to provide against the probability in some cases, the possibility in many cases, and the danger in all cases that such commingling will result in the loss of client's money." ' " (*Black* v. *State Bar* (1962) 57 Cal.2d 219, 225-226 [18 Cal.Rptr. 518, 368 P.2d 118]; *Clark* v. *State Bar* (1952) 39 Cal.2d 161, 168 [246 P.2d 1].) Petitioner's indiscriminate use of the trust account—evidenced by his own testimony—demonstrates the dangers sought to be avoided by adherence to the rule. He asserts that because no client's funds were in the account, no client injury resulted and discipline is not warranted for what can be only a technical breach. However, it is "not necessary that there be a misappropriation of a client's funds in order to constitute a violation of rule 9 [now rule 8-101]. That rule is violated merely by the attorney's . . . failure to deposit and manage such money in the manner designated by the rule . . . . [A]ny violations of its mandate are subject to appropriate discipline." (*Vaughn* v. *State Bar* (1972) 6 Cal.3d 847, 858-859 [100 Cal.Rptr. 713, 494 P.2d 1257].)

■    We are persuaded that petitioner willfully violated both the letter and salutory purposes of rule 8-101 by using his client trust account for his personal convenience on these two occasions. (See *Greenbaum* v. *State Bar* (1976) 15 Cal.3d 893, 903-904 [126 Cal.Rptr. 785, 544 P.2d 921].)

■    Petitioner is guilty of further misconduct in issuance of a check without sufficient funds in the account. We have held that issuance of such checks manifests an abiding disregard of " ' "the fundamental rule of ethics—that of common honesty—without which the profession is worse than valueless in the place it holds in the administration of justice." ' " (*Tomlinson* v. *State Bar* (1975) 13 Cal.3d 567, 577 [119 Cal.Rptr. 335, 531 P.2d 1119]; see also *Alkow* v. *State Bar* (1952) 38 Cal.2d 257, 264 [239 P.2d 871]; *Tatlow* v. *State Bar* (1936) 5 Cal.2d 520, 524 [55 P.2d 214].)

VIOLATIONS RELATING TO BUREAU OF ETHICS AND PRACTICES

Petitioner is charged with breach of fiduciary duty for failing to account as the escrow officer for a small "club" investing in second deeds

of trust—the Bureau of Ethics and Practices (bureau). The bureau was established by George Dorward—one of petitioner's clients—and Harold Wright.

In June 1973 petitioner attended a meeting with Dorward, Wright and investors in the bureau. The testimony as to what transpired during this meeting is in conflict. Two investors testified petitioner informed the group he was the escrow officer and would insure all legal forms were properly executed. He also asked club members to refer clients to him, offering to give to the bureau one-third of any fee collected from such clients. Petitioner and Dorward specifically discussed investments in second trust deeds and informed members money invested by them would be used to buy such deeds. Wright corroborated this testimony.

Petitioner testified that he first attended a bureau meeting on August 9, 1973, and that he spent the majority of the meeting talking on the telephone. He denied agreeing to serve as escrow officer or soliciting clients for a percentage of fees collected.[5] Dorward—who later pleaded guilty to grand theft in conjunction with club activities—corroborated petitioner's story.

Moneys invested by bureau members were usually received by Wright. Wright wrote checks on his business accounts drawn to petitioner with written instructions directing petitioner to disburse such funds according to Dorward's instructions. Wright testified that on three to five occasions, petitioner also received oral instructions to disburse funds in each case for the purchase of trust deeds specifically approved by Wright and Dorward.

Dorward testified he frequently instructed petitioner to "hand over blanket amounts" of money bearing no relation to sum required for specific trust deed purchases. Petitioner followed written instructions to disburse as Dorward directed, ignoring the instruction that he was to disburse only for purchase of deeds of trust.

Petitioner acknowledged receiving written instructions and a total of $26,129.24 from Wright. He testified he assumed all the money belonged to Wright.

Wright and other members of the bureau became concerned in late 1973 when Dorward informed Wright that trust deeds had been

---

[5]Although petitioner denied in testimony before the hearing panel he had been asked to serve as escrow officer, he acknowledged in answers to interrogatories he had received funds as an escrow officer.

purchased through a mortgage company which Wright was unable to locate or ascertain whether it existed. Wright repeatedly called petitioner to obtain an accounting. Petitioner neither rendered the accounting nor returned money which bureau members had invested.

In response to State Bar interrogatories, petitioner was unable to account for $6,571.38 of the total amount received from Dorward. He asserted he was unable to locate accounting records relating to disbursement of funds entrusted to him. He attached no cancelled checks or receipts evidencing disbursements in responding to the interrogatories.

Petitioner's counsel asserted in response to a request by the State Bar he could produce copies of cancelled checks from bank photocopies, but none have been submitted. Petitioner has not explained the unaccounted-for $6,571.38.

### PETITIONER'S CONTENTION

■ Petitioner contends only that disciplinary board findings of misconduct are the result of prejudice and that the proceedings are the result of a private grudge on the part of the complaining witness in the bureau matter.

Petitioner's contentions are clearly without merit. He has, moreover, waived the claim of prejudice when he neglected to seek disqualification of hearing panel members under Rules of Procedure, rule 7.10. (See 3B West's Annot. Bus. & Prof. Code, foll. § 6087; Deering's Cal. Codes Ann. Rules (1976 ed.) pp. 648-649; *Athearn* v. *State Bar* (1977) 20 Cal.3d 232, 236 [142 Cal.Rptr. 171, 571 P.2d 628].) ■ Petitioner makes no showing that these proceedings were initiated as a result of a private grudge. Moreover, personal motivations for initiating proceedings are not important when, as here, the record independently discloses petitioner's misconduct. (*Sodikoff* v. *State Bar* (1975) 14 Cal.3d 422, 431 [121 Cal.Rptr. 467, 535 P.2d 311].)

### DISCIPLINE

■ The unanimous recommendation of the disciplinary board is that petitioner be disbarred. Such recommendation is, of course, entitled to great weight. (See *Goldman* v. *State Bar* (1977) 20 Cal.3d 130, 140 [141 Cal.Rptr. 447, 570 P.2d 463].)

Petitioner was a fiduciary as to funds belonging to members of the bureau. (*Simmons* v. *State Bar* (1969) 70 Cal.2d 361, 365 [74 Cal.Rptr. 915, 450 P.2d 291]; *Johnstone* v. *State Bar* (1966) 64 Cal.2d 153, 155-156 [49 Cal.Rptr. 97, 410 P.2d 617].) His failure both to protect and account for such funds constitutes a serious breach of duty as a fiduciary and of his oath and duties as an attorney. (See *Worth* v. *State Bar* (1976) 17 Cal.3d 337, 340-341 [130 Cal.Rptr. 712, 551 P.2d 16]; *Sodikoff* v. *State Bar* (1975) 14 Cal.3d 422, 428-429 [121 Cal.Rptr. 467, 535 P.2d 311].) The record additionally establishes he willfully failed to comply with California Rules of Court rule 955, deposited personal funds in a client trust account, and wrote checks for which there were insufficient funds. He neither urges nor does there appear to be any mitigating circumstances.

In making its recommendation the disciplinary board properly considered petitioner's record of three prior disciplinary proceedings. (See *In re Hamilton* (1977) Bar Misc. 3928; *In re Hamilton* (1976) Bar Misc. 3891; *In re Hamilton* (1958) Bar Misc. 2475; see also *Schullman* v. *State Bar* (1976) 16 Cal.3d 631 [128 Cal.Rptr. 671, 547 P.2d 447]; *Eschwig* v. *State Bar* (1969) 1 Cal.3d 8, 18 [81 Cal.Rptr. 352, 459 P.2d 904, 35 A.L.R.3d 662].) It appears petitioner has lapsed into a pattern of misconduct in which breaches of his oath and duties as an attorney have become commonplace. ■ His continued status as a member of the State Bar is inconsistent with the purpose of disciplinary proceedings to afford protection to the public, maintain the integrity of the legal profession, maintain high professional standards for attorneys and preserve public confidence in the legal profession. (See *Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186]; *Martin* v. *State Bar* (1978) 20 Cal.3d 717, 723 [144 Cal.Rptr. 214, 575 P.2d 757].)

It is ordered that Jesse A. Hamilton be disbarred from the practice of law in this state, and that his name be stricken from the roll of attorneys, effective 30 days after the filing of this opinion. It is also ordered that he comply with the provisions of rule 955, subdivision (a), California Rules of Court within 30 days of the effective date of this order and that he file an affidavit with the clerk of this court as provided in subdivision (c) of the rule within 60 days of the effective date of the order showing his compliance with said order.