Filed 7/28/14  Avery v. Tahmazian CA2/5
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DAVID L. AVERY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JILBERT TAHMAZIAN,<br><br>    Defendant and Appellant. | B250837<br><br>(Los Angeles County<br>Super. Ct. No. BC463757) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Gutierrez, Preciado & House, Calvin House; Joseph P. Bregman for Defendant and Appellant.

The Gilleon Law Firm, James C. Mitchell, Samuel A. Clemens for Plaintiff and Respondent.

## INTRODUCTION

Plaintiff and respondent David Avery (plaintiff) needed $16 million in financing to complete an indoor water park. To obtain that financing, he entered a Management Agreement Contract (MAC) with defendants Magnet Investment Group, LLC (Magnet) and Dino Awadisian (aka Vahak Awadisian)[1] (Awadisian), Magnet's "Managing Member," pursuant to which plaintiff was to deposit $1 million in attorney defendant and appellant Jilbert Tahmazian's (defendant) client trust account, and Magnet was to "reserve a Financial Instrument" with a minimum face value of $100 million. Plaintiff deposited $1 million in defendant's client trust account, defendant released $979,940 to Magnet and retained $20,060 as a fee for his escrow services, and Magnet failed to reserve the financial instrument required by the MAC. Only $100,000 of plaintiff's $1 million was returned to him. Plaintiff brought an action against Magnet, Awadisian, and defendant on various theories. In a court trial, the trial court ruled for plaintiff, awarding him $1,170,000. On appeal, defendant contends that the judgment is not supported by substantial evidence. We affirm.

## BACKGROUND

### I. Plaintiff's First Amended Complaint

Plaintiff brought an action for breach of contract (Magnet and defendant in separate causes of action), common count—money paid for benefit (defendant, Magnet, and Awadisian), fraud—intentional misrepresentation (Magnet and Awadisian), conversion (defendant, Magnet, and Awadisian), breach of fiduciary duty (defendant), and aiding and abetting fraud (defendant). Plaintiff later dismissed his cause of action for aiding and abetting fraud.

---

[1]   Default judgments were entered against Magnet and Awadisian. Magnet and Awadisian are not parties to this appeal.

2

## II.    The Trial Court's Findings of Fact

As to defendant, the trial concerned plaintiff's causes of action for conversion, breach of contract, and breach of fiduciary duty.[2]  In its statement of decision, the trial court made the following findings of fact[3]:

Defendant, an attorney, was admitted to practice law in California in 1989.  He specialized in criminal defense work.  In June 2009, defendant met Awadisian who leased offices near defendant's office.  Defendant came to know Awadisian quite well and did a significant amount of legal work for Awadisian personally and for Awadisian's company, Magnet.

Plaintiff was a resident of Illinois.  In 2006, after he sold his family's quarry business, plaintiff and a partner decided to build an indoor water park.  In 2009, plaintiff had to stop construction on the park after two of the three banks financing the project pulled out.  Plaintiff needed an additional $16 million in financing to complete the project.  Plaintiff heard about Awadisian and his investment company, Magnet, from a third party.  Although plaintiff had not met Awadisian in person, Awadisian and others assured him that Magnet was reputable.

In January 2010, Awadisian, as Magnet's "Managing Member," emailed the MAC to plaintiff.  On January 25, 2010, plaintiff and Awadisian signed the MAC.  The MAC provided that plaintiff would wire $1 million to a bank account Awadisian designated.  The designated bank account was not a Magnet business account, but defendant's client trust account.  Once plaintiff wired the funds, Awadisian would "'reserve a Financial Instrument issued by a top rated financial institution/top 50 bank with a minimum face

---

[2]    The record on appeal does not disclose what happened to plaintiff's common count cause of action against defendant.  The trial also served as a default prove up hearing against Magnet and Awadisian.

[3]    Because neither party challenges the trial court's findings of fact in its statement of decision, our recitation of facts relies primarily on the statement of decision and the trial exhibits cited in that decision.  When necessary to present a fuller picture of the matters at issue, we set forth trial testimony that was not specifically referenced in the statement of decision.

value of $100,000,000.'" If Awadisian did not reserve such a financial instrument within 15 banking days, plaintiff's $1 million would be returned to plaintiff plus a two percent penalty. The trial court found that "all of these material representations were false."

On January 27 and 29, 2010, plaintiff transmitted a total of $1 million to defendant's client trust account in three wire transfers. He believed that by sending his funds to an attorney to hold, he would be "protected." Fifteen days passed and plaintiff did not hear from Awadisian. Plaintiff's $1 million was not refunded, and he was not paid a two percent penalty.

Defendant testified that he agreed to assist Awadisian with his transaction with plaintiff. Defendant said that his assistance consisted of allowing his client trust account to be used to receive plaintiff's $1 million. He said that he received a copy of the MAC in January 2010, and that he read and understood the MAC. Defendant testified both at his deposition and at trial that the MAC was "the entire contract" which set forth his role in Awadisian's transaction with plaintiff. In his deposition, defendant characterized his role in the transaction as providing "escrow services" for a two percent fee. At trial, defendant attempted to "back away" from that deposition testimony. The trial court found that by changing his testimony, and by his demeanor, defendant "severely undermined his credibility."

The trial court found that nothing in the MAC gave defendant the authority to transmit plaintiff's funds to Magnet. Nevertheless, defendant, in three transfers on February 2, 2010, transferred $979,940 to Magnet. Defendant retained the balance of plaintiff's $1 million—$20,060. Plaintiff and defendant both testified that plaintiff did not give defendant instructions about what to do with plaintiff's money once it was transferred to defendant's trust account. According to defendant, Awadisian told defendant that Awadisian would be entering into the transaction with plaintiff, that Awadisian would provide defendant with the MAC, and that upon receipt of the money, the money would be transferred to Awadisian's account pursuant to the MAC. Plaintiff did not learn of the transfers to Magnet until after he filed this action.

4

When he did not timely hear from Awadisian, plaintiff "reach[ed] out" to defendant and others about his investment. Defendant did not return plaintiff's telephone calls. In March 2010, "[defendant] and/or others caused to be delivered to [plaintiff]" a memo from Awadisian that stated that Awadisian had been unable to meet his recent business obligations due to his "serious battle with STOMACH Cancer." The memo described the actions Awadisian was taking that would enable him "very quickly to make good on each and every contractual commitment [he] made before [his] illness." The trial court found that the memo could "best be described as a 'lulling' statement, designed to engender sympathy and to 'explain' why Awadisian had not performed his obligations to his 'clients.' Such documents are regularly issued by con artists who seek to mollify their victims and to delay reporting to law enforcement."

In the following months, plaintiff made efforts to have his money refunded. In September or October 2010, defendant told plaintiff that Awadisian would refund plaintiff $100,000 as a showing of good faith, and that the rest of the funds were expected to be refunded within 30 days. In November 2010, defendant refunded $100,000 to plaintiff through, apparently, defendant's client trust account. The trial court found that although defendant claimed that he received the $100,000 from Awadisian, nothing in the wire transfer document from defendant to plaintiff or in an email from Awadisian to defendant instructing him to refund the $100,000 supported that claim.

After receiving the $100,000 refund, plaintiff and his partner followed up with many emails and telephone calls to Awadisian and defendant without success. No other amounts were refunded. The trial court found that the promise that the balance of plaintiff's funds would be refunded within 30 days was "yet another lulling statement designed to delay the initiation of legal action."

III.     **The Trial Court's Conclusions of Law**

In finding Magnet and Awadisian liable on all of plaintiff's causes of action, the trial court stated, "The evidence in this case reveals the existence of a very sophisticated and financially successful fraud perpetrated by the defendants in this case." The trial

5

court stated that it had reviewed Magnet's bank records, which records showed that funds were used at Las Vegas casinos and for other purposes, but not for the purchase or reservation of a "'financial instrument issued by a top rated financial institution/top 50 bank with a minimum face value of $100,000,000.'"

As for defendant, the trial court found him liable on plaintiff's conversion cause of action because nothing in the MAC permitted defendant to take any of plaintiff's money for escrow fees.[4] It found defendant liable on plaintiff's breach of contract and breach of fiduciary duty causes of action based on "his agreement to act on behalf of his client Awadisian, as both an escrow agent for the $1 million dollars and as a knowing participant in the fraud perpetrated on [plaintiff]." The trial found incredible defendant's testimony that he simply received and reviewed the MAC and found it to be legitimate. It found that the MAC contained "patent material falsehoods, dressed up in vague and confusing 'legalese'" that defendant and Awadisian designed to "lull unsophisticated investors like [plaintiff] into parting with their funds."

The trial court concluded that "[defendant], and his co-schemers, knew that an investor like [plaintiff] would be more inclined to transfer funds if they were to be held by an attorney, who is presumed to be ethical and act in accordance with the high standards of the legal profession. The participation of [defendant] was thus highly instrumental in persuading [plaintiff] to invest his money with [Magnet] and Awadisian."

The only fair reading of the MAC, the trial court concluded, was that it provided that defendant was to serve as an escrow agent for the deal between plaintiff and Magnet. Defendant admitted he was to serve as an escrow agent in his deposition "before he thought better of it and unpersuasively tried to change his testimony at trial." The trial court ruled that by agreeing to act as an escrow officer, defendant obligated himself to safeguard plaintiff's funds until Awadisian performed. Defendant did not safeguard

---

**4** Although plaintiff's first amended complaint requested $900,000 on plaintiff's conversion cause of action, based on the evidence adduced at trial, plaintiff limited his request at the conclusion of the trial to the $20,000 of plaintiff's $1 million that defendant retained.

6

plaintiff's funds, and instead breached the MAC by immediately delivering plaintiff's funds to his "co-schemer" Awadisian. Thus, the trial court ruled, defendant was liable on plaintiff's breach of contract cause of action.

Defendant was liable on plaintiff's breach of fiduciary duty cause of action, the trial court ruled, because when "'an attorney receives money on behalf of a third party who is not his client, he nevertheless is a fiduciary as to such third party. Thus the funds in his possession are impressed with a trust, and his conversion of such funds is a breach of the trust.' *Johnstone v. State Bar*, 64 Cal. 2d 153, 155-56 (1966). Indeed, such conduct is an act of moral turpitude and dishonesty. *Id.* at 156." In a footnote, the trial court noted that "[s]uch conduct might also be criminal in nature. Given the magnitude of the fraud in this case, and the likelihood of other victims, this case should be referred to the FBI/United States Attorney and/or the Glendale Police Department/District Attorney."

## DISCUSSION

Defendant contends that substantial evidence does not support the trial court's rulings that he was liable on plaintiff's conversion, breach of contract, and breach of fiduciary duty causes of action. Substantial evidence supports the trial court's ruling that defendant was liable on plaintiff's breach of fiduciary duty cause of action.[5]

## I. Standard of Review

"'In general, in reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court

---

[5] The damages awarded for plaintiff's breach of contract and breach of fiduciary duty causes of action were the same and included the damages awarded for plaintiff's conversion cause of action. Because we hold that substantial evidence supports the trial court's ruling that defendant was liable on plaintiff's breach of fiduciary duty cause of action, we need not address whether substantial evidence supports the trial court's ruling on plaintiff's breach of contract and conversion causes of action.

decision. [Citations.]" [Citation.] In a substantial evidence challenge to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]'" (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765, quoting *Estate of Young* (2008) 160 Cal.App.4th 62, 75-76.)

## II.      Application of Relevant Principles

"When an attorney receives money on behalf of a third party who is not his client, he nevertheless is a fiduciary as to such third party. Thus the funds in his possession are impressed with a trust . . . ." (*Johnstone v. State Bar* (1966) 64 Cal.2d 153, 155; *Guzzetta v. State Bar* (1987) 43 Cal.3d 962, 978-979 [in a marital dissolution proceeding, an attorney who deposited community property funds into his trust account was a fiduciary who held the funds in trust both for his client and his client's wife].) An attorney who acts as an escrow holder owes a fiduciary duty to a non-client who deposits property into the escrow. (*Virtanen v. O'Connell* (2006) 140 Cal.App.4th 688, 702-703; *Wasmann v. Seidenberg* (1988) 202 Cal.App.3d 752, 756-757 [an attorney acting as an escrow holder does not owe a professional duty to a third-party who deposits property into the escrow, but owes that party a fiduciary duty].)

With respect to plaintiff's $1 million, the MAC provided:

"WHEREBY, [plaintiff] will send via bank wire the sum of $1,000,000.00 (ONE MILLION UNITED STATES DOLLARS) to bank account designated by [Magnet] ('Wire') (See Exhibit A attached) [Account name: 'Law Offices of Jilbert Tahmazian Attorney Client Trust']; and within Fifteen (15) Banking Days upon receipt and confirmation of wire, [Magnet] will reserve a Financial Instrument issued by a top rated financial institution/top 50 bank with a minimum face value of $100,000,000.00 (ONE HUNDRED MILLION UNITED STATED DOLLARS) for a duration of one (1) year

8

excluding coupons and interest, with a third-party provider ('Financial Instrument') with the understanding that [Magnet] shall arrange for the reservation of and procurement of the issuance of the Financial Instrument and that [Magnet] shall arrange for the monetization of such Financial Instrument. The Financial Instrument can be extended, upon mutual agreement between [plaintiff] and [Magnet], for an additional four (4) periods of one (1) year each at an additional cost at which time cost will be borne by [plaintiff]. [Plaintiff] is fully aware, that from receipt of the Wire sent to [Magnet], it shall take no more than approximately Fifteen (15) Banking Days or less, excluding national and banking holidays, for issuance of Financial Instrument and the monetization of the Financial Instrument to be completed. Monetization shall equal no less than 65.0% (Sixty-Five Percent) loan-to-value to a high range of 85.0% (Eighty-Five Percent) loan-to-value of the Financial Instrument less any bank and administrative fees ('Funds'). [Magnet] and [plaintiff] agree that any assignment and monetization of the Financial Instrument would be irrevocable and be incorporated within this agreement and be bound by its terms.

"WHEREBY, should [Magnet] not perform in quoted term of Fifteen (15) Banking days or less, excluding national and banking holidays for issuance of Financial Instrument and the monetization of the Financial Instrument completed, [Magnet] agrees to return [plaintiff]'s funds plus Two (2%) Percent Penalty on the Sixteenth (16th) Banking Day of receipt, clearing and posting of [plaintiff]'s wire transferred funds; and should [plaintiff] place this request into written format—without hesitation or delay and immediately."

Defendant contends that plaintiff should not have been "surprised" that he transferred plaintiff's funds to Magnet because, among other things, the MAC required Magnet to return the funds to plaintiff if Magnet failed to obtain the promised financial instrument within 15 days of receipt of plaintiff's funds. That is, because the MAC provided that Magnet, and not defendant, was to return plaintiff's funds on Magnet's non-performance, defendant properly transferred the funds to Magnet. In the absence of an instruction in the MAC that defendant was to transfer plaintiff's funds to Magnet, the

9

provision in the MAC that Magnet was to return plaintiff's funds on Magnet's non-performance should be read to mean that Magnet was to cause to be returned to plaintiff, through defendant, and release any interest in, plaintiff's funds that continued to be held in defendant's client trust account.

Defendant contends that his status as an attorney did not require him to assume any responsibilities beyond those stated in the MAC. Although he acknowledges that an attorney who accepts funds into his client trust account must not distribute those funds improperly, he contends that the attorney's obligation does not extend beyond the instructions he was given for the disposition of those funds. That is, defendant contends that "[w]here the documentation that created the fiduciary relationship does not create a duty to act as the plaintiff contends, his claim lacks merit." (Citing *R & B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 362-367.) Defendant argues that he did not violate his fiduciary duty to plaintiff because the MAC did not instruct him to hold plaintiff's funds until Awadisian obtained the promised financial instrument, and plaintiff did not give him instructions on how he was to dispose of the funds when plaintiff wired the funds to his client trust account.

Plaintiff did not instruct defendant about what defendant was to do with plaintiff's $1 million once it was in defendant's client trust account. Defendant testified that the MAC was "the entire contract" which set forth his role in Awadisian's transaction with plaintiff. The MAC did not instruct defendant to transfer plaintiff's funds to Awadisian and to retain a fee for himself after plaintiff transferred his funds to defendant's client trust account. Defendant transferred the funds to Awadisian because Awadisian, his client, told him to the transfer the funds. Defendant's transfer and retention of plaintiff's funds without plaintiff's instruction or permission violated the fiduciary duty created when defendant accepted in his client trust account the deposit of plaintiff's $1 million. (See *Johnstone v. State Bar, supra,* 64 Cal.2d at p. 155; *Guzzetta v. State Bar, supra,* 43 Cal.3d at pp. 978-979 ; *Virtanen v. O'Connell, supra,* 140 Cal.App.4th at pp. 702-703; *Wasmann v. Seidenberg, supra,* 202 Cal.App.3d at pp. 756-757.) Accordingly, sufficient evidence supports plaintiff's breach of fiduciary duty cause of action.

10

**DISPOSITION**

The judgment awarding plaintiff $1,170,000 on his breach of fiduciary duty cause of action is affirmed. Plaintiff is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


TURNER, P. J.


KRIEGLER, J.

11