Filed 8/31/22  TipTop Restoration v. Zokaeem CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| TIPTOP RESTORATION, INC., | B312880 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 19STCV12999) |
| JOSHUA J. ZOKAEEM, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Affirmed.

Rahel Goharchin Javaheri for Plaintiff and Appellant.

The Law Offices of Kevin Gerry and Kevin Gerry for Defendant and Respondent.

————————————

TipTop Restoration, Inc. (TipTop) appeals from a judgment in favor of defendant attorney Joshua J. Zokaeem following the trial court's grant of Zokaeem's motion for summary judgment.

In its opening brief on this appeal, TipTop states the issues thus: "This [a]ppeal presents an issue of first impression regarding whether a California attorney could be liable for [c]onversion, [n]egligence and/or [b]reach of [f]iduciary [d]uty if he receives insurance proceeds specifically earmarked for his client's vendor's emergency services invoice and disburses the proceeds to himself and his client without any payment to that vendor. Also, there is no precedent regarding whether equity requires creation of an equitable lien as to an ascertainable amount of insurance proceeds, particularly designated by an insurance carrier for a third-party vendor's emergency services that come into the possession and control of an attorney during the processing of an insurance claim."

TipTop contends that issues of material fact exist as to each of the three causes of action against Zokaeem and whether an equitable lien or constructive trust should be imposed on Zokaeem.

For reasons discussed more fully below, we will affirm the grant of summary judgment because (1) TipTop concedes that it held no contractual or express lien; (2) the undisputed facts belie the contention that the funds transmitted to the attorney were "specifically earmarked" for TipTop, or otherwise represented an "ascertainable amount" of funds as to which TipTop had a property interest; and (3) TipTop has failed to demonstrate a disputed issue of fact as to its relationship with Zokaeem that would support imposing a fiduciary or other obligation of trust on

2

him that would have constrained him from handling the insurance settlement proceeds as he did. Thus, we affirm.

## BACKGROUND

### A.    Factual Summary

Bigan Banafshian, doing business as L.A. Bargain (collectively, Banafshian), was a commercial tenant at a property in Los Angeles, California, owned by Abraham Yadegaran, where he operated a clothing business. In June 2017, the property and Banafshian's inventory sustained water damage.

Pursuant to a written agreement dated June 2, 2017, TipTop provided emergency water damage dry-out and clean-up services for Banafshian at the property. Under the "Emergency Service Authorization Contract" (Emergency Contract), TipTop represented it would bill Banafshian's insurer as a courtesy. Banafshian agreed that TipTop was authorized to act on Banafshian's behalf with the insurer and that he would hold any check from the insurer in trust for TipTop's benefit and give the check to TipTop. Banafshian also agreed that ultimately, he was responsible for payment to TipTop.

On July 21, 2017, Banafshian's insurer, Hartford Casualty Insurance Company (Hartford), advanced $50,000 to Banafshian. The record does not disclose what precipitated this payment.

On September 11, 2017, TipTop sent to Banafshian a first detailed invoice for remediating water damage, totaling $11,198.71. On or about September 13, 2017, Banafshian retained Zokaeem "to represent [him] with respect to [the] claim [he] had tendered to [his] insurance carrier, Hartford." On September 27, 2017, Zokaeem forwarded TipTop's September 11, 2017 invoice to a Hartford general adjuster, Wendy Cervantes.

According to the president of TipTop, Dan Reichman, Zokaeem and Hartford "requested more information regarding TipTop's services."  Thus, on October 10, 2017, TipTop sent an email to Cervantes, attaching, inter alia, documentation of labor used to address the water damage, the Emergency Contract, and a second invoice for $89,991.12.  TipTop did not transmit this information to the insurer through Zokaeem, and he was not copied on this email.  The record does not contain a separate email or cover letter to Zokaeem attaching these documents or an acknowledgement from Zokaeem that he received these documents prior to TipTop filing a complaint.

On October 11, 2017, TipTop sent an invoice to Banafshian.  That invoice totaled $100,553.77, and appears, to some extent, duplicative of the invoice that TipTop had sent to Hartford the day before.  After describing the September 11, 2017 and October 11, 2017 invoices in his declaration, Reichman averred he "provided the invoices and supplemental information to both . . . Hartford and . . . Zokaeem."

More than a year later, in a letter from Hartford to Zokaeem[1] dated November 15, 2018, the insurer communicated its resolution of Banafshian's claims.  The letter stated that Hartford "has been unsuccessful validating you client's claim presentation."  Hartford determined Banafshian lost inventory valued $64,415.75 and that it could substantiate lost business income only in the amount of $16,199.  It also reviewed TipTop's

---

[1] The letter from Hartford was addressed to Zokaeem's law firm, but written to the attention of the public adjuster who provided some information to Hartford on Banafshian's behalf relating to inventory loss.

4

invoice for $100,553.77, and was "able to validate $74,529.37." The Hartford letter attached a spreadsheet entitled "STATEMENT OF LOSS." One row listed "Tip Top Restoration pack out 5 day" and indicated under the columns for "RCV loss" and "ACV loss" the amount of $74,529.37.

The Hartford letter concluded the total "[b]usiness [p]ersonal [p]roperty claim came to $138,945.12." After deducting a $1,000 policy deductible and Hartford's "previous claim advance of $50,000," Hartford determined a balance of $87,945.12 was due. Accordingly, Hartford stated it would send two checks under separate cover: a check for $87,945.12 and a check for $16,199. Hartford also observed they would not issue $11,198.71 for emergency water mitigation as described in TipTop's first invoice because there was no contractual obligation in Banafshian's "lease to complete the water mitigation, or the removal of permanently installed structural finishes." Hartford did not name TipTop on any of the checks or provide any notice that TipTop was a lienholder. Zokaeem "promptly forwarded" the payment to his client. However, in his memorandum of points and authorities in support of a demurrer, Zokaeem also stated that he had taken his "fees and distributed funds to [the] defendants."

TipTop's Reichman contends in October and November 2018, he and Zokaeem had six to 10 telephone conversations, and Zokaeem "repeatedly said he is working on resolving the claim and getting TipTop paid. He . . . also state[d] that he represents the owners of L.A. Bargain and can't share information, but he understands that TipTop needs to get paid from the insurance benefits."

5

On November 27, 2018, Zokaeem sent an email to TipTop, stating, "Please forward your itemized bill. Everyone has to keep in mind the situation here so we can come up with a fair resolution to this. The client is obviously destitute at this point, has not worked since the date of incident, has zero income . . . . He is older, can barely speak English, and his life is in shambles. [¶] Let's come up with a resolution." Reichman viewed this email as Zokaeem attempting "to get [TipTop] to lower [its] bills."

According to TipTop's first amended complaint, on November 28, 2018, TipTop sent a third invoice to Banafshian. The invoice totaled $217,182.60, which was for continually accruing storage costs for Banafshian's inventory and furniture.

On November 29, 2018, TipTop sent an email to Zokaeem stating, "[w]e have reports from . . . the insurance and we know that our invoices were paid. We demand that you disclose with us all insurance payment to date. [¶] In addition, there is still a lot of personal property of your insured at our storage . . . . We tried to communicate with you, leaving voice mails and never received a call back. Not from you, not from the client. [¶] Attached are all invoices owed to TipTop up to date. The total amount is $333,528.00 not including delinquency charges and interest . . . . [¶] Please let me know when should we receive all insurance related documents."

On December 11, 2018, TipTop again emailed Zokaeem: "We are trying to work with you and your client on this file but so far we don't see any progress. [¶] Can you tell me please if the claim was approved and let me speak directly with the carrier to support our charges." "I . . . never got the opportunity to support my charges after the claim got approve[d]." Zokaeem responded, "Unfortunately they were not going to take anything into

6

consideration.  We are all on the same page in that we wish there was more money to go around but the reality is that there isn't." TipTop then asked, "Did they confirm that the claim is covered but they are just arguing the amount that needs to be paid?" Zokaeem responded, "Attached is [the] letter from Hartford . . . . [¶]  The total check for [business personal property] is $87,945.12."

On April 13, 2019, counsel for TipTop sent an email to Zokaeem with the subject line "TipTop Restoration Inc. v. L.A. Bargain, et al." to inquire about the "[w]hereabouts of the $74,529.37."  Zokaeem responded, "I am in receipt of your letter and provided the info to my former client.  I tried to reach you but got voicemail.  I understand [Banafshian] and his partner had contact with Tip[T]op and you are free to call him directly to work this out.  This has nothing to do with me or my firm. Tip[T]op did not have a lien and back when I spoke with Omri [TipTop's supervisor for the L.A. Bargain project], he told me he will deal with the client and insurance company directly.  He knew I was closing the file on my end and said that his company has had to deal with this in the past and that he would take care of it. . . ."

## B.    Procedural Summary

On April 15, 2019, TipTop initiated this lawsuit, and on August 19, 2019, filed a first amended complaint.  TipTop sought recovery for breach of contract, account stated, and services rendered against Banafshian and quantum meruit against Banafshian and property owner Yadegaran.  TipTop alleged it spoke with Banafshian "various times for payment of its [i]nvoice . . . [and Banafshian] complained he did not receive satisfaction from the Hartford insurance claim and refused to pay [TipTop]."

(Underscoring omitted.)  As to Zokaeem, TipTop alleged causes of action for conversion, breach of fiduciary duty, and negligence.  In each of these claims against Zokaeem, TipTop alleged that it was a lien holder.  As against Zokaeem, TipTop sought compensatory damages in the amount of $74,529.37 as well as punitive damages.

On September 30, 2019, Zokaeem filed a demurrer and motion to strike the first amended complaint.  On October 24, 2019, following the hearing on Zokaeem's demurrer and motion to strike, the trial court issued a minute order striking references to TipTop as a lien holder in the first amended complaint.  TipTop has not appealed from this order.

On October 22, 2020, Zokaeem filed a motion for summary judgment on the bases that there was no lien agreement, Zokaeem did not owe a fiduciary or other duty to TipTop, and there was no evidence that TipTop had a right to possess the funds from Hartford because, inter alia, a mere contractual right of payment does not suffice to establish a claim for conversion.  In his declaration in support of motion, Zokaeem averred that TipTop "never presented [him] with any proposed lien(s) from [TipTop], and [TipTop] never provided [him] with a copy of any contact [*sic*] they had with" Banafshian.  Further, he was never "put on notice by [TipTop] of any asserted lien(s) . . . regarding [its] rights to future payments and/or recovery from [Banafshian] and/or . . . Hartford."

In its opposition, TipTop argued, inter alia, that "[w]hat is clear by the evidence is that Zokaeem paid his client without first paying the entity that the specified $74,529.37 was supposed to go to."  TipTop acknowledged "there was admittedly no written lien signed between the parties[, but] the facts . . . indicate" an

8

equitable lien and constructive trust.[2]  In responding to seven of Zokaeem's 14 undisputed facts, which ranged from whether Zokaeem agreed to act as an escrow holder or undertook to act on Zokaeem's benefit or on its behalf, TipTop did not cite specific, conflicting evidence, but instead claimed that "[a]n equitable lien . . . was created . . . as . . . Zokaeem received insurance benefits he knew belonged to . . . TipTop, which created a constructive trust" and cited to the entirety of evidence it put forth in opposition to the motion for summary judgment.

On January 8, 2021, the trial court heard Zokaeem's motion for summary judgment.  The court indicated its tentative was to grant the motion and observed it did not see any cases on point "on all fours" submitted in opposition.  It stated it would "take [the matter] under submission.  And . . . give . . . both [parties] an opportunity to file some supplemental points and authorit[ies] to give [the court] cases that are actually on point, or [the court is] going to make the effort to find one [itself]." Zokaeem objected, noting TipTop had over three months to provide the court with appropriate legal authorities and arguments.  The court responded, "Now, you say it was [TipTop's] burden to find these cases and come in with [them].  I agree with you, but I would still prefer not to [make the effort to find the cases] if I can.  So I've said I'm willing to do some additional work myself.  If I'm inclined to change this tentative, based on what cases I may find, I would certainly give both sides a—an

_____

[2] TipTop observed that Zokaeem filed his motion for summary judgment without conducting any discovery.  However, TipTop did not argue that it needed to conduct further discovery pursuant to Code of Civil Procedure section 437c, subdivision (h) before it could oppose the motion.

9

additional opportunity to address those new cases on a request for . . . reconsideration . . . or just by an invitation for supplemental briefing."

On January 11, 2021, TipTop submitted supplemental briefing in which it identified two cases to support its arguments for equitable lien and conversion: *Bank of India v. Weg and Myers, P.C.* (N.Y.App.Div. 1999) 257 A.D.2d 183 and *McCafferty v. Gilbank* (1967) 249 Cal.App.2d 569. In the supplemental brief, TipTop also raised for the first time the contention that Zokaeem and TipTop entered into an agreement, purportedly evidenced by Zokaeem's November 27, 2018 and December 11, 2018 emails to TipTop. Zokaeem filed written objections to the supplemental brief as unauthorized. The trial court did not explicitly rule on Zokaeem's objections, but given the clarity of its earlier statement that the matter was under submission, subject to the court entertaining new citations to case law, it can be inferred that the court considered only the newly cited cases.

On February 2, 2021, the trial court granted Zokaeem's motion for summary judgment. It found, "there is no issue of material fact before the court that would preclude a judgment for this defendant as a matter of law. Contrary to [TipTop]'s allegations, as a matter of law, the insurance proceeds paid to . . . Zokaeem's client were not [TipTop]'s moneys. It had no direct claim to them as such, and this defendant had no contractual, or equitable, or fiduciary relationship existing or imposed upon him to hold or provide to [TipTop] the insurance proceeds transmitted to him by his client's insurance company, even if some of those proceeds were obtained from the insurance company based upon invoices and other evidence from [TipTop] transmitted to it by

10

defendant Zokaeem reflecting work done by [TipTop] to repair damages at the insured's place of business."

On March 1, 2021, the trial court held a bench trial relating to the remaining defendants. At the conclusion of trial, the trial court executed a judgment in favor of TipTop as to Banafshian, but in Zokaeem's favor with respect to TipTop's claims against him.

TipTop timely appealed the judgment as to Zokaeem.

## DISCUSSION

### A.    Zokaeem's Motion to Strike

On appeal, Zokaeem moves to strike from the appellate record (1) TipTop's January 11, 2021 supplemental brief, (2) the March 1, 2021 reporter's transcript of the trial against defendant Banafshian, (3) documentary evidence presented at trial that was not part of the record before the court at the time of the summary judgment motion, and (4) references in TipTop's briefs to testimony and evidence provided during the March 1, 2021 trial.

The trial court did not expressly rule on Zokaeem's objections to the supplemental brief. By his motion to strike, Zokaeem properly renews his objection, which we review de novo. (*Taylor v. Financial Casualty & Surety, Inc.* (2021), 67 Cal.App.5th 966, 980.)

The record is clear that to the extent the trial court permitted any supplemental briefing, it was to provide the trial court with legal authorities on point. However, TipTop did not limit the substance of its supplemental brief to legal argument. Rather, it raised a new factual theory: that Zokaeem and TipTop entered into an agreement. Doing so was improper. Courts have routinely declined to consider new theories raised for the first time in a reply brief, and the considerations of equity and judicial

11

economy that have guided courts to do so (see, e.g., *Hibernia Sav. and Loan Soc. v. Farnham* (1908) 153 Cal. 578, 584; *Simpson v. The Kroger Corp.* (2013) 219 Cal.App.4th 1352, 1370; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766) apply with equal if not greater force to a party raising a new theory in what is essentially a surreply.

Turning to the trial transcript and evidence presented at trial, "[i]t is well settled that in reviewing a summary judgment, ' ". . . the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal. [Citation.] Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal. [Citations.]" ' [Citation.]" (*Havstad v. Fidelity National Title Ins. Co.* (1997) 58 Cal.App.4th 654, 661.)

Accordingly, we grant Zokaeem's motion to strike TipTop's January 11, 2021 supplemental brief, the March 1, 2021 trial transcript, TipTop's augmented record at pages 83 to 87, and any reference to evidence and testimony from these two items in TipTop's opening brief at pages 8 to 9 and page 13.

## B.    Legal Standard and Standard of Review

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." (Code Civ. Proc., § 437c, subd. (c).) A defendant seeking summary judgment has met the "burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (*Id.*, subd. (p)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff "to show that a triable

12

issue of one or more material facts exists as to the cause of action or a defense thereto."  (*Ibid*.)

We review the trial court's summary judgment rulings de novo.  In doing so, we liberally construe the plaintiff's evidentiary submission while strictly scrutinizing the defendant's own showing, and resolve any evidentiary doubts or ambiguities in the plaintiff's favor.  (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1083, citing *Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1438.)

"Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiff['s] brief."  (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6; see *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [" 'This court is not required to discuss or consider points which are not argued or which are not supported by citation to authorities or the record' "].)

TipTop argues issues of material fact precluded summary judgment of its causes of action for conversion, breach of fiduciary duty, and negligence.  In connection with these causes of action, TipTop argues the equities support the imposition of an equitable lien or constructive trust.  We address each argument below.

## C.  The Trial Court Properly Granted Summary Judgment as to TipTop's Claim for Conversion

" 'Conversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages.' "  (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 451.)  "Money can be the subject of an action for conversion if a specific sum

13

capable of identification is involved." (*Id*. at p. 452.) "Neither legal title nor absolute ownership of the property is necessary. [Citation.] A party need only allege it is 'entitled to immediate possession at the time of conversion. [Citations.]' [Citation.] However, a mere contractual right of payment, without more, will not suffice." (*Ibid*., italics omitted, citing *Imperial Valley L. Co. v. Globe G. & M. Co.* (1921) 187 Cal. 352, 353-354.)

Throughout the litigation and this appeal, TipTop argues it was entitled to $74,529.37 from the Hartford check for $87,945.12. In support of this argument, TipTop contends that Hartford "clearly earmarked" $74,529.37 for TipTop.

TipTop did not identify disputed facts that support its conclusion or demonstrate that TipTop was entitled to immediate possession of those funds. TipTop had a contractual right to payment from Banafshian. It is undisputed it did not have an express lien securing its payment. Further, rather than "earmark" the funds for TipTop, Hartford's letter indicated only that Banafshian's coverable loss included $74,529.37 worth of services performed by TipTop. But even that amount was aggregated by the Hartford with Banafshian's allowed claim for inventory loss (which had nothing to do with TipTop's services) and then the allowed claims were reduced by the amounts of the policy deductible and the advance payment. TipTop simply cannot establish a property right or claim to a specific portion of the resulting $87,945.12 check that the Hartford sent to Zokaeem. It is also undisputed that, notwithstanding TipTop

14

having independently communicated with Cervantes of Hartford, Hartford did not include TipTop as a payee on the check.[3]

TipTop does not cite to any authority in which a court has found a third party has a right to immediately possess money an attorney recovers in similar situation.  Indeed, "as a general matter, an attorney receiving payment of a judgment or settlement on behalf of his or her client has no obligation to satisfy the client's debts out of that fund. . . .  It is only when the creditor has some property interest in the fund or a trust relationship exists that such an obligation might arise." (*Farmers Ins. Exchange v. Zerin, supra*, 53 Cal.App.4th at p. 459.)

TipTop refers us to *McCafferty v. Gilbank, supra*, 249 Cal.App.2d 569, but that matter is inapposite.  There, a former wife secured a judgment against her former husband in Ohio. The husband's California lawyer negotiated and drafted an agreement between his client and the former wife by which the husband agreed to pay, in full satisfaction of the Ohio judgment, a sum equal to one-half of the net proceeds from an auto injury action pending in California in which he was the plaintiff.  (*Id.* at pp. 571, 575.)  The attorney did not dispute the characterization of the transaction as an assignment of a portion of the proceeds of the California action.  (*Id.* at p. 576.)  The California action settled, and two drafts payable jointly to the husband and his attorney were provided to the attorney.  (*Id.* at pp. 573-574.)  The husband and the attorney took the proceeds, and neither made payment to the former wife.  (*Id.* at p. 574.)

---

[3] Copies of the checks are not included in the appellate record.

15

The Court of Appeal concluded that the former wife had been given a property interest in the proceeds of the California action, and that the attorney's position "that he had an obligation to turn the fund over to his client in spite of the agreement which he himself had drafted," was "a curious contention which [could not] be sustained." (*McCafferty v. Gilbank*, *supra*, 249 Cal.App.2d at p. 576.) Quoting *General Exchange Ins. Corporation v. Driscoll* (1944) 315 Mass. 360 [52 N.E.2d 970, 973], the Court of Appeal observed, " ' "There was nothing in the defendant's status as [an] attorney for [his client] . . . which made it his duty to pay to his client money *which he knew* . . . belonged to [the] plaintiff. [Citations.] . . . It was his duty to hold for the plaintiff so much of the proceeds . . . as represented the plaintiff's known interest in it." ' " (*McCafferty*, *supra*, at pp. 576-577; see *Weiss v. Marcus* (1975) 51 Cal.App.3d 590 [concluding a claim for conversion could be stated against an attorney who was aware of an express lien between his client and his client's former attorney].)

Here, Zokaeem did not negotiate a settlement between his client and TipTop, which would have given rise to a global understanding that a specific sum or percentage of the proceeds belonged to TipTop.[4] Nor does TipTop argue that it had a property interest—such as an express lien in or assignment of—the insurance proceeds as a result of Banafshian's debt.[5]

---

[4] The record fails to demonstrate that Zokaeem received the Emergency Contract.

[5] TipTop also cites *Bank of India v. Weg and Myers, P.C.*, *supra*, 257 A.D.2d 183. Of course, decisions of other jurisdictions are not binding on this court. (See, e.g., *T.H. v. Novartis*

16

Instead, TipTop had only a contractual right to payment, which binding precedent has established is insufficient to state a cause of action for conversion. (See *Imperial Valley L. Co. v. Globe G. & M. Co.*, *supra*, 187 Cal. at pp. 353-354; accord, *Farmers Ins. Exchange v. Zerin*, *supra*, 53 Cal.App.4th at p. 452.)

**D.    No Issue of Material Fact Exists as to TipTop's Breach of Fiduciary Duty Cause of Action**

With respect to the fiduciary duty claim TipTop alleges against Zokaeem, which is conceded to be novel, this case resembles *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25 (*Wolf*),[6] where our colleagues in Division Seven were called upon to consider whether a complaint stated a cause of action for breach of fiduciary duty, despite the fact that the plaintiff had acknowledged that his pleading was "devoid of allegations showing an agency, trust, joint venture, partnership or other 'traditionally recognized' fiduciary relationship." (*Id.* at p. 30.) As in the instant case, the plaintiff in *Wolf* pressed an issue of "first impression."

As in *Wolf*, it is instructive to start the analysis by recognizing the essential features of a fiduciary relationship. Between parties to a transaction, a fiduciary relationship exists " ' "wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a

---

*Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 175.) Moreover, *Bank of India* is inapposite because the attorney was on notice that the lender, Bank of India, had a security interest in all of the attorney's business client's assets, including the insurance proceeds at issue. (*Bank of India*, *supra*, at p. 188.)

[6] Previously published at 106 Cal.App.4th 625.

relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent. . . ." ' [Citations]." (*Wolf, supra,* 107 Cal.App.4th at p. 29.)  There is inherent in each of the traditionally recognized fiduciary relationships "the duty of undivided loyalty the fiduciary owes to its beneficiary, imposing on the fiduciary obligations far more stringent than those required of ordinary contractors."[7]  (*Id.* at p. 30.)

The court in *Wolf* applied these general principles and rejected the plaintiff's contention that his contractual rights as creator of the Roger Rabbit character that Disney had acquired and promoted "necessarily required [him] to repose 'trust and confidence' in Disney to account for the revenues received, and because such revenues and their sources are in the exclusive knowledge and control of Disney, . . . the relationship is 'confidential' in nature and necessarily imposes a fiduciary duty upon Disney, at least with respect to accounting to Wolf for the gross revenues received."  (*Wolf, supra,* 107 Cal.App.4th at p. 31;

---

[7] As did the court in *Wolf*, we find Justice Cardozo's well-cited observation on fiduciary duties to be apt:  " 'Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties.  A trustee is held to something stricter than the morals of the market place.  Not honesty alone, but the punctilio of an honor the most sensitive is then the standard of behavior.' "  (*Wolf, supra,* 107 Cal.App.4th at p. 30, quoting *Meinhard v. Salmon* (1928) 249 N.Y. 458, 464 [164 N.E. 545, 546].)

*Downey v. Humphreys* (1951) 102 Cal.App.2d 323, 332 [for the proposition that a debt is not a trust and does not create a fiduciary relationship].)

Similarly, we conclude that TipTop's expectation of payment from the Hartford insurance proceeds to address Banafshian's contractual debt does not give rise to a fiduciary relationship between TipTop and Zokaeem. TipTop never retained Zokaeem, who at all times held himself out to be, and was recognized to be, the attorney for Banafshian. TipTop did not even rely upon Zokaeem as an intermediary for most of the information that it sent to the Hartford. In pressing Banafshian's insurance claim, Zokaeem was representing his client's interest, a fact made particularly clear by the fact that the insurance claims included amounts for damages incurred by Banafshian wholly unrelated to the work performed by TipTop.

TipTop argues it can demonstrate a fiduciary relationship with Zokaeem as a matter of law in three ways: (1) pursuant to California disciplinary precedent; (2) because, it contends, Zokaeem acted as an escrow holder of the $74,529.37; and (3) pursuant to California Rules of Professional Conduct, rule 1.15. We are not persuaded.

First, each of the three disciplinary opinions TipTop cites for the proposition that an attorney holding funds for a non-client has the same fiduciary duties in dealing with those funds as if an attorney-client relationship existed is distinguishable.

*Johnstone v. State Bar* (1966) 64 Cal.2d 153 (*Johnstone*) involved an attorney who represented an injured worker and was aware of a lien in favor of the workman's compensation insurer against any recovery in the personal injury action. (*Id.* at pp. 154-155.) The attorney asked the insurer "the extent of [the]

lien so he could take it into consideration in attempting to effect a compromise with the tortfeasor." (*Id*. at p. 157.) The tortfeasor agreed to pay $3,000, and the attorney agreed to pay the insurer $1,000 out of that sum. (*Id*. at p. 155.) The attorney received a draft of $3,000 made payable to the attorney, his client, and the insurer and obtained endorsements from his client and the insurer before depositing the money in his trust account. (*Ibid*.) He never provided the $1,000 to the insurer.

In *Guzzetta v. State Bar* (1987) 43 Cal.3d 962 (*Guzzetta*), an attorney represented a husband in a dissolution action. After the sale of a restaurant owned by the husband in which the wife claimed an interest, the attorney, the husband, the wife, and the wife's attorney agreed that $7,630.92 in sale proceeds would be deposited into the attorney's trust account, and all four agreed that the funds could be withdrawn only on court order or stipulation of the parties. (*Id*. at p. 970, 971.) The attorney failed to return the funds to the husband or his wife. (*Id*. at p. 970.) The Supreme Court concluded, "*the nature of the agreement* pursuant to which the proceeds from the sale of the restaurant were deposited in [the attorney's] trust account created a duty to [the wife] as well as to [the attorney]'s client." (*Id*. at p. 979, italics added.)

In *Hamilton v. State Bar* (1979) 23 Cal.3d 868, the attorney was charged with breach of fiduciary duty for failing to account *as the escrow officer* for a small club that invested in second deeds of trust. The club was established by the attorney's client, George Dorward, and another man, Harold Wright. (*Id*. at pp. 876-877.) As part of the club's activities, Wright wrote checks to the attorney with instructions as to how to disburse the funds, including the purchase of trust deeds approved by Dorward and

20

Wright. (*Id*. at p. 877.) Dorward, however, instructed his attorney to " 'hand over blanket amounts' " of money bearing no relation to the amounts for specific trust deed purchases. (*Ibid*.) The attorney conceded that he believed all the money belonged to Wright. (*Ibid*.) Later, Wright sought an accounting, which the attorney failed to provide. (*Id*. at pp. 877-878.) Dorward later pleaded guilty to grand theft. (*Id*. at p. 877.)

Here, TipTop does not dispute that there was no express lien which (as in *Johnstone*) would have given TipTop a property interest in the res to which the lien attached.[8] Moreover, due to the attorney's involvement in brokering a settlement agreement in *Johnstone* between his client and the insurer, there was a global understanding, which included the lawyer, that a specific sum was due to the insurer. The attorney did not have to unilaterally determine the proper amount to give to the insurer, which may have conflicted with his client's wishes. The same is not true here.

Further, the attorneys in *Johnstone* and *Guzzetta* directly entered into clearly articulated agreements with the promisee, thereby inducing the promisee to reasonably rely on an expectation of the attorney's truthfulness. (See *Barbara A. v. John G.* (1983) 145 Cal.App.3d 369, 383 [" '[a] member of the State Bar should not under any circumstances attempt to deceive another person' "].) Again, the same facts are not present here.

---

[8] " 'A lien is a charge, imposed in some mode other than by a transfer in trust, upon specific property, by which it is made security for the performance of an act.' " (*Weber v. McCleverty* (1906) 149 Cal. 316, 320, italics omitted.)

21

Prior to the filing of its (now-stricken) supplemental brief, TipTop did not contend it entered into an agreement with Zokaeem. TipTop also did not identify in its separate statement in opposition to the motion its theory that Zokaeem agreed TipTop would be paid from the insurance proceeds or facts establishing such an agreement. At most, TipTop asserted only that Zokaeem negotiated with TipTop concerning its bill. Thus, TipTop may not now assert such an agreement existed. (See Code Civ. Proc., § 437c, subd. (b)(3) ["The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed . . . [and] shall set forth plainly and concisely any other material facts the opposing party contends are disputed"]; *Havstad v. Fidelity National Title Ins. Co.*, *supra*, 58 Cal.App.4th at p. 661 [" ' "possible theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal" ' "].)

Even if we entertained TipTop's new theory, Zokaeem and TipTop's communications do not give rise to an agreement or meeting of the minds. TipTop states it "understood from Zokaeem that it would be paid from the insurance claim proceeds" because during the months of October and November 2018, Reichman and Zokaeem "had [six to ]10 phone conversations[,] and . . . Zokaeem repeatedly said he [was] working on resolving the claim and getting TipTop paid. [Zokaeem] would also state that he represents [Banafshian] and can't share information, but he understands that TipTop needs to get paid from the insurance benefits." Then, pointing to Zokaeem's November 27, 2018 email to TipTop, TipTop suggests that Zokaeem confirmed a meeting of the minds that TipTop

would be paid from the insurance proceeds.  In that email Zokaeem stated, "Please forward your itemized bill.  Everyone has to keep in mind the situation here so we can come up with a fair resolution to this.  The client is obviously destitute at this point . . . .  [¶]  Let's come up with a resolution."

The evidence reveals only that Zokaeem attempted to—but was not able to—negotiate a resolution on his client's behalf, which is markedly different from *Johnstone* and *Guzzetta*. Indeed, Reichman acknowledges no agreement was reached in his declaration when referring to the November 27, 2018 email: "Zokaeem was trying to get [TipTop] to lower [its] bills." Moreover, such negotiations are antithetical to a fiduciary relationship between Zokaeem and TipTop.  Further, that Zokaeem sought to obtain TipTop's invoices, itemized bills, and other information do not establish that he was acting on TipTop's behalf; rather, such information was necessary for Hartford to process his client's insurance claim.  Evidencing this understanding, and in keeping with the language in the Emergency Contract authorizing TipTop to pursue reimbursement directly from Banafshian's insurance, TipTop forwarded some documentation directly to Cervantes of Hartford without copying Zokaeem.

TipTop's contention that there was a meeting of the minds also fails because there is no evidence that TipTop and Zokaeem reached an understanding about how Zokaeem was to be compensated for his efforts in prosecuting the insurance claim between September 2017 and October 2018.  TipTop's position seems to be that Zokaeem was to be uncompensated because all of the funds that Hartford identified as related to the covered services TipTop provided should have been paid to it.  In the

23

absence of such evidence, there is no dispute that Zokaeem was counsel to Banafshian and that he was prosecuting his client's insurance claims. He did not undertake to act on behalf of TipTop.

Zokaeem also did not act as an escrow agent as in *Hamilton v. State Bar*, *supra*, 23 Cal.3d 868. On appeal, TipTop contends Zokaeem "essentially acted as an escrow holder." Yet, he did not cite evidence to dispute Zokaeem's contention in his separate statement that he "never agreed to act as [an] escrow or stakeholder for [TipTop]." Instead, TipTop disputed Zokaeem's contention only on the basis that "[a]n equitable lien was created."

Indeed, the transaction at issue lacked fundamental hallmarks of an escrow agency. " 'An escrow involves the deposit of documents and/or money with a third party to be delivered on the occurrence of some condition.' [Citations.] An escrow holder is an agent and fiduciary of the parties to the escrow. [Citations.] The agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow. [Citations.]" (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711; see *Claussen v. First American Title Guaranty Co.* (1986) 186 Cal.App.3d 429, 435 ["an escrow holder is an agent for all parties who are exchanging instruments and payments through an escrow"].)

Zokaeem did not receive funds directly from TipTop that he was charged with holding as he awaited an exchange or the occurrence of a condition. And the parties did not provide him with instructions, which would have defined the scope of his obligations. (*Axley v. Transamerica Title Ins. Co.* (1978) 88

24

Cal.App.3d 1, 9 [" '[I]t is generally held that no liability attaches to the escrow holder for his failure to do something not required by the terms of the escrow or for a loss incurred while obediently following his escrow instructions' "]; accord, *Romo v. Stewart Title of California* (1995) 35 Cal.App.4th 1609, 1618, fn. 9 [obligation of escrow holder limited to faithful compliance with instructions from the principal].)[9]

TipTop next argues that an issue of material fact exists whether Zokaeem complied with California Rules of Professional Conduct, rule 1.15(d)(7), which states that a lawyer shall "promptly distribute, as requested by the client or other person,* any *undisputed* funds or property in the possession of the lawyer

---

[9] TipTop cites *Wasmann v. Seidenberg* (1988) 202 Cal.App.3d 752, 756-757, to support his argument that Zokaeem owed it a fiduciary duty as an escrow agent. In that case, a wife's attorney and a husband's attorney sought to formalize the terms of a property division under which the husband would convey his interest in the couples' residence in exchange for $70,000. After counsel conferred many times, the husband's attorney sent to the wife's attorney a final draft of the settlement agreement and a grant deed, both of which were executed by the husband, as well as written instructions that the wife's attorney was authorized to record the deed only upon obtaining $70,000 for the husband. The wife's attorney accepted the grant deed and provided it to his client, who recorded the deed without providing $70,000 to her former husband. The Court of Appeal found wife's attorney did not owe a professional duty to the husband, but did owe a fiduciary duty to the husband as an escrow agent.

As observed above, here, there was no property exchange; TipTop did not directly entrust funds to Zokaeem's care; nor has TipTop demonstrated $74,529.37 of the insurance proceeds was its property.

25

or law firm* that the client or other person* is entitled to receive."[10] (Rules of Prof. Conduct, rule 1.15(d)(7), italics added.) TipTop suggests TipTop violated the rule because he disbursed funds that were disputed. TipTop has not provided any citation to legal authorities demonstrating that rule 1.15 *prohibits* the distribution of funds to the client in the event that the owner of the funds is disputed.[11] (Rules Prof. Conduct, rule 1.15.) Without such authority, we decline to read rule 1.15 in this manner. TipTop also does not cite to any authorities or provide cogent argument as to how the distribution of disputed funds would give rise to a fiduciary duty. Finally, as described above,

---

[10] The asterisks indicate defined terminology under rule 1.0.1 of the Rules of Professional Conduct. " 'Person' has the meaning stated in Evidence Code section 175." (*Id*., rule 1.0.1(g)(1).)

[11] To the extent TipTop sought to enforce rule 1.15 of the Rules of Professional Conduct such that it received the funds from the Hartford checks, TipTop fails to first address whether it qualifies as an "other person" under the rule. Rule 1.15(a) suggests the duties under the rule are triggered when "funds [are] received or held by a lawyer or law firm* *for the benefit of* a client, *or other person* to whom the lawyer owes a contractual, statutory, or other legal duty . . . .*" (Italics added.) A comment to rule 1.15(a) states: "Whether a lawyer owes a contractual, statutory or other legal duty under paragraph (a) to hold funds on behalf of a person* other than a client in situations where client funds are subject to a third-party lien will depend on the relationship between the lawyer and the third-party, whether the lawyer has assumed a contractual obligation to the third person* and whether the lawyer has an independent obligation to honor the lien under a statute or other law." (*Id*., rule 1.15, com. (1).)

TipTop also has not shown that it has a property interest in or right to possess the funds.

Woven throughout TipTop's arguments is the notion that Zokaeem breached fiduciary obligations to it, because, it contends, the facts give rise to an equitable lien and constructive trust. Indeed, in response to Zokaeem's undisputed facts concerning Zokaeem acting as an escrow holder or for the benefit or on behalf of TipTop, TipTop responds only that an equitable lien and constructive trust were created. TipTop's post hoc argument is circular. "Before a constructive trust can be imposed, the plaintiff must prove that the defendant's acquisition of the property was *wrongful*." (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 398.) Similarly, an equitable lien is imposed out of general considerations of right and justice. (See *Farmers Ins. Exchange v. Zerin*, *supra*, 53 Cal.App.4th at p. 453.) Equitable liens and constructive trusts are remedies to address inequitable conduct. They do not independently give rise to a substantive claim for a breach of fiduciary duty. (See *PCO, Inc*, *supra*, at p. 398 [observing that, otherwise, "a separate, actionable breach of fiduciary duty occurs in any case involving an alleged conversion"].)

In sum, we conclude the trial court did not err in granting Zokaeem's motion for summary judgment as to TipTop's breach of fiduciary duty cause of action.

E. **The Trial Court Did Not Err in Granting Summary Judgment as to TipTop's Negligence Cause of Action**

TipTop argues there is a triable issue of material fact as to whether Zokaeem breached "a duty to pay TipTop money he had notice belonged to TipTop," and argues a constructive trust

27

should be imposed.  (Italics omitted.)  As discussed above in addressing TipTop's conversion claim, however, TipTop has not submitted evidence that creates a triable issue of material fact that the funds belonged to TipTop or that TipTop had a right to them vis-à-vis Zokaeem.

## F.     Neither Remedy of an Equitable Lien or a Constructive Trust is Available to TipTop

TipTop argues that in connection with its claims for conversion and breach of fiduciary duty, the equities favored the imposition of an equitable lien.  Similarly, TipTop argues a constructive trust should be created generally and in connection with its claims for breach of fiduciary duty and negligence.

Both a constructive trust and equitable lien are equitable remedies dependent upon a substantive basis for liability.  (See *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, *supra*, 150 Cal.App.4th at p. 398 ["A constructive trust, however, is an equitable *remedy*, not a substantive claim for relief"]; *Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018, 1023, fn. 3 ["Because both of these equitable forms of remedies are dependent upon a substantive basis for liability, they have no separate viability if all of [the plaintiff's] other causes of action are time-barred"]; *Farmers Ins. Exchange v. Smith* (1999) 71 Cal.App.4th 660, 667 ["An equitable lien is, after all, merely an equitable remedy"].)  Thus, because the trial court properly granted summary judgment as to each cause of action against Zokaeem, neither a constructive trust or equitable lien is available to compel Zokaeem to pay monies to TipTop.

Nevertheless, TipTop has not demonstrated a dispute of material fact that it would have been entitled to either remedy.

28

"An equitable lien is a right to subject property not in the possession of the lienor to the payment of a debt as a charge against that property.  [Citation.]  It may arise from a contract which reveals an intent to charge particular property with a debt or 'out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.' [Citation.]" (*Farmers Ins. Exchange v. Zerin*, *supra*, 53 Cal.App.4th at p. 453.)

"A promise to pay a debt out of a particular fund, without more, will not create an equitable lien on that fund." (*Farmers Ins. Exchange v. Zerin*, *supra*, 53 Cal.App.4th at p. 454.) However, a "promise to pay from a specific fund may suffice to create an equitable lien if considerations of detrimental reliance or unjust enrichment are implicated." (*Id*. at p. 455.)

" 'A constructive trust is an equitable remedy to compel a person who has property to which he is not justly entitled to transfer it to the person entitled thereto.  [Citations.]' [Citation.] . . . '[A] constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled.' [Citation.]" (*Farmers Ins. Exchange v. Zerin*, *supra*, 53 Cal.App.4th at p. 457, italics omitted.)

TipTop claims Zokaeem was unjustly enriched "by taking his fee from money designated for TipTop's services."  However, "there is no question that the attorney gains no unjust enrichment by simply turning over to his or her client what the agreement with the client *requires*: the balance of the proceeds of the litigation after legal fees and costs." (*Farmer's Ins. Exchange v. Smith*, *supra*, 71 Cal.App.4th at p. 670.)  Accordingly, we cannot say there is any dispute of material fact that Zokaeem's

taking of his fees out of the Hartford proceeds unjustly enriched him.[12]

Moreover, as we addressed above, TipTop has not set forth any evidence or argument supporting its theory that it was entitled to the Hartford funds from Zokaeem.

Further, in the absence of evidence of a property interest in the Hartford monies or a trust relationship with Zokaeem, we agree with *Farmers Ins. Exchange v. Smith, supra*, 71 Cal.App.4th 660 that pressing Zokaeem to act as a collection agent on TipTop's behalf, without recompense from TipTop and in potential conflict with his client's wishes, is not equitable. (*Id.* at pp. 662, 670-671, 672.)

Thus, we conclude the equities do not favor the creation of an equitable lien or constructive trust in this matter.

---

[12] TipTop does not develop any argument as to which claim between the two of them should have priority. (See *Gilman v. Dalby* (2009) 176 Cal.App.4th 606 [holding an attorney lien for costs had priority over an earlier medical lien].)

TipTop contends it "reasonably relied on getting paid for its services from the insurance proceeds." However, it does not and cannot claim that it relied on Zokaeem obtaining the proceeds on its behalf at the time it provided the water damage remediation to Banafshian as Banafshian did not hire Zokaeem until months later. TipTop also does not argue it detrimentally relied on Zokaeem procuring payment on its behalf thereafter or state facts in its separate statement in opposition that support such a theory. We observe that TipTop asserts in its opening brief that if Zokaeem was not representing Banafshian, "said amount would go directly to TipTop or Zokaeem's client." However, contention is speculative; there is no evidence in the record that Hartford would have paid the same amount regardless of Zokaeem's involvement.

## DISPOSITION

We affirm the trial court's judgment in favor of Zokaeem. Each party is to bear their own costs on appeal.

NOT TO BE PUBLISHED


KELLEY, J.[*]


We concur:



ROTHSCHILD, P. J.



BENDIX, J.

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.